IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMANDA LYNN WARD, | : Civil No. 1:24-CV-1203 |
| | : |
| Plaintiff | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| LELAND DUDEK, Acting | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant | : |

## MEMORANDUM OPINION

## I.  Introduction

Amanda Ward filed a Title XVI application for supplemental security income on October 28, 2021. (Tr. 10). Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Ward was not disabled from her alleged onset date of disability of May 1, 2018, through December 21, 2023, the date of the ALJ's decision. (Tr. 10, 26).

---

[1] Leland Dudek became the acting Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Leland Dudek is substituted as the defendant in this suit.

Ward now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.  <u>Statement of Facts and of the Case</u>

On October 28, 2021, Ward applied for supplemental security income, citing an array of physical and mental impairments, including panic disorder with agoraphobia, anxiety, depression, obsessive compulsive disorder ("OCD"), posttraumatic stress disorder ("PTSD"), and COVID-19. (Tr. 102). Ward was 40 years old at the time of the alleged onset of disability, had at least a high school education, and had past employment as a waitress. (Tr. 24)

With respect to Ward's mental health impairments[2] the record revealed the following: Ward treated at WellSpan Philaven ("WSP") on October 22, 2018, where CRNP Catherine Plasic-Van Wagner developed an initial treatment plan to reduce Ward's symptoms of anxiety and panic. (Tr. 483). Thereafter, beginning in January of 2019, Ward had monthly visits with CRNP Plasic-Van Wagner from January to September of 2019. (Tr. 483-511). Those records reflect Ward consistently displayed restlessness and an anxious mood and/or affect. (*Id.*).

In June of 2019, Ward began consulting with a therapist, MS Erica Roland. (Tr. 423). Treatment notes from June through November of 2019 indicate that Roland and Ward set goals, mostly related to overcoming Ward's agoraphobia, and that there was generally positive progress, evidenced both by Ward's success in pursuing these goals and an upward trend of scores on the Outcome Rating Scale. (Tr. 401-46).

---

[2] The plaintiff's appeal focuses mainly on the ALJ's treatment of her mental health impairments. Accordingly, while the record contains treatment notes regarding other impairments, we focus our discussion primarily on Ward's records concerning her mental health impairments.

3

Beginning in March of 2020 and into 2021, Ward began a series of telehealth appointments with CRNP Plasic-Van Wagner. (Tr 576-610). These records show that during this time, Ward had anxiety about COVID-19, masking, vaccines, returning to work in a restaurant, and potentially beginning a prescription for Lexapro. (*Id.*). Overall, these records indicate that, while the pandemic was especially challenging for Ward, she was generally "keeping her anxiety, panic and agoraphobia under control." (Tr. 584).

On September 24, 2021, Ward had an initial therapy assessment with Dr. Bryan Gottlieb, Psy.D. (Tr. 570-75). Dr. Gottlieb diagnosed panic disorder and agoraphobia and suggested Ward continue meeting with him for individual therapy. (Tr. 575). Ward met with Dr. Gottlieb roughly every two weeks for the next two years. (Tr. 512-619, 657-73, 890-1093, 1094-1412). Those records show slow but steady improvements for Ward. (*Id.*). In March of 2022, Ward said she was proud of her progress, and that her daughter had remarked that Ward was doing things—like going out in public—for the first time in years. (Tr. 529, 531).

4

By August of 2022, Ward was making regular visits to various types of stores and was able to attend a family reunion. (Tr. 1048). In September of 2022, Ward attended a large birthday party, successfully challenging herself to stay the whole time. (Tr. 1022). Her progress steadily continued, with minimal slowdowns or setbacks, and by March of 2023 she attested that she was "sleeping well . . . [went] out to a restaurant for the first time in six years . . . [drove] a mile from her home, which is the furthest she's gone in some time." (Tr. 913). The records show Ward consistently made progress on her therapy goals of more exposure to the outside world, more care spent on her grooming and appearance, and maintaining a healthy body weight. (Tr. 512-619, 657-73, 890-1093, 1094-1412).

On May 1, 2023, Dr. Gottlieb recorded Ward had "less anxiety overall, no panic at home, and shorter duration of panic when she is not at home. She attributes her improvement to individual therapy, group therapy, and medications." (Tr. 1111). Dr. Gottlieb later noted that Ward was making progress on her short-term goal of utilizing breathing exercises and imagery as coping skills to help keep panic attacks at bay.

5

(Tr. 1103).  These notes show Ward succeeded in her long-term goal of doing thirty minutes of exercise a day, which she had been doing for at least six months.  (Tr. 1104).  As to her exposure goals, Dr. Gottlieb noted that Ward had recently been able to go out to eat, grocery shop, and drive longer distances, and that the plan was for her to continue extending these exposures.  (*Id.*).

It is against this factual backdrop that the ALJ conducted two hearings in Ward's case, the first on June 27, 2023, and a supplemental hearing on December 11, 2023.  (Tr. 10).  Ward and a vocational expert ("VE") testified at the first hearing, and the VE testified at the second hearing along with a medical expert ("ME"), Dr. Karl Umbrasas.  (Tr. 44, 78).  At the first hearing, Ward discussed how her panic disorder with agoraphobia limited her ability to leave the home, and the VE answered hypothetical questions from the ALJ, testifying that a person with Ward's history and certain specific limitations could find employment in the national economy.  (Tr. 51-76).  At the second hearing, the ME testified that he believed Ward's mental limitations would cause her to miss two days a month from a regular five-day-a-week employment schedule.  (Tr.

83-94). The VE testified that missing two days a month would preclude unskilled labor altogether. (Tr. 95-97).

Following this hearing on December 11, 2023, the ALJ issued a decision denying Ward's application for benefits. (Tr. 10-26). In Step 1 of that decision, the ALJ concluded that Ward met the insured status requirements through September 30, 2025. (Tr. 13). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Ward suffered from the following severe impairments: panic disorder with agoraphobia, obsessive compulsive disorder, anxiety, and depression. (*Id.*). At Step 3 the ALJ determined that Ward did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*).

Between Steps 3 and 4 the ALJ concluded that Ward retained the residual functional capacity to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: She would be able to make simple, work-related decisions. She could tolerate occasional changes in the work setting. She could tolerate no interaction with the public. She would be able to tolerate occasional interaction with coworkers so long as the work is not being performed in tandem with coworkers.

7

(Tr. 16).

In reaching this RFC determination, the ALJ made the following findings: as to Ward's alleged symptoms, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 18).  In that same vein, the ALJ found that "the claimant's medical records contain substantial evidence that is not consistent with the claimant's allegations pertaining to her mental impairments." (*Id.*).  The ALJ noted Ward's efforts in overcoming her agoraphobia, and found that the evidence as a whole showed that "treatment is effective in limiting the claimant's symptoms related to her mental impairments, the claimant does not experience symptoms related to her mental impairments to the extent alleged by the claimant, and the claimant does not experience limitations related to her mental impairments to the extent alleged [.]" (Tr. 19-20).

The ALJ also discussed her consideration of the various medical opinions on record. She was persuaded by the opinions of the state agency medical consultants, Drs. David Clark and Karel Keiter, who both opined that Ward did not have a severe medically determinable physical impairment. (Tr. 20). The ALJ was partially persuaded by the opinion of the independent mental status evaluator, Dr. Anne Miller, Psy.D. (Tr. 21). The ALJ found that Dr. Miller's opinion was only somewhat supported by, and was inconsistent with, the medical records. (*Id.*). The ALJ concluded that "the aspect of Dr. Miller's opinion pertaining to responding appropriately to usual work situations and to changes in a routine work setting is not persuasive." (*Id.*). The ALJ noted that the opinion of the state agency psychological consultant, Dr. John Gavazzi, was consistent with certain clinical findings and was supported by "explanatory comments that include references to symptoms related to [Ward's] mental impairments." (*Id.*). Despite that consistency and support, the ALJ found Dr. Gavazzi's opinion only partially persuasive because it did not fully accommodate the claimant's mental impairments to the extent the ALJ concluded necessary. (*Id.*).

9

Dr. Gary Zimberg performed a mental residual functional capacity assessment on Ward, and the ALJ found the ensuing opinion to be unpersuasive, reasoning that it was internally inconsistent. (Tr. 22). Specifically, the ALJ noted that Dr. Zimberg's opinion was that Ward had no limitations in the paragraph B criteria but also stated that Ward cannot work on a regular and sustained basis and would miss up to 20 days of work each month. (*Id.*). The ALJ found that these two findings were inconsistent with each other, and that each finding was also inconsistent with other portions of the medical record, such as "the presence of documented abnormal clinical examination findings" with respect to the plaintiff's mental health impairments. (*Id.*).

The ALJ was partially persuaded by the opinion expressed in the testimony and interrogatories of the ME, Dr. Karl Umbrasas. (Tr. 22). The ALJ found Dr. Umbrasas' opinion that Ward's limitations did not equal a listing was consistent with and supported by the record. (*Id.*). However, the ALJ found Dr. Umbrasas' opinion regarding absenteeism was inconsistent with the medical records and with "specific abnormal clinical findings pertaining to the claimant's mental impairments." (Tr.

10

23).  The ALJ wrote separately to address Dr. Umbrasas' testimony, which the ALJ found unpersuasive.  (*Id.*).  The ALJ found Dr. Umbrasas' opinion on Ward's potential absenteeism to be inconsistent both with his own testimony and with Ward's medical records showing improvement in her ability to leave the house and travel to various stores.  (*Id.*).

The ALJ then found at Step 4 that Ward could not perform her past work but, at Step 5, found that she could perform other jobs that existed in significant numbers in the national economy, such as sorter, marker, and garment bagger.  (Tr. 23).  Having reached these conclusions, the ALJ determined Ward had not met the demanding showing necessary to sustain this claim for benefits and denied her claim.  (Tr. 26).

This appeal followed.  (Doc. 1).  On appeal, Ward challenges the adequacy of the ALJ's decision, arguing she omitted certain necessary limitations and impairments and improperly weighted certain medical opinions.  (*See* Doc. 11).  The appeal is now fully briefed and ripe for resolution. (Docs. 11, 14).  As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be affirmed.

11

## III.  Discussion

### A.  Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No.

13

3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather

14

the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

**B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive disability benefits under the Social Security Act, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits

under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all of the claimant's medically determinable impairments,

16

including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting*

17

*Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion

supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C.  Step 2 Analysis

At Step 2, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities," 20 C.F.R. 404.1520(c), or if it is "something beyond 'a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'" *McCrea v. Comm'r of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted). This Step 2 inquiry is a de minimis screening device used to cast out meritless claims. *McCrea,* 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.,* 347 F.3d 541, 546 (3d Cir.

2003). The claimant bears the burden to show that an impairment should be considered severe. *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).

### D. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in October of 2021 after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability

means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other

21

hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### E. This Case Will Be Affirmed.

Ward makes several arguments as to why the decision is not supported by substantial evidence. For the reasons that follow, we conclude that the ALJ's decision is supported by substantial evidence and, accordingly, we will affirm.

### 1. The ALJ Did not Err in Omitting Certain Limitations or Impairments from the Claimant's RFC.

Ward's first argument is a sprawling exploration of the facts of the case. (Doc. 11 at 11-19). Ward notes that the ALJ found her capable of work at all exertional levels with certain limitations but argues that those limitations are insufficient to address the impairments that the ALJ identified as severe. (*Id.* at 12). In support of this argument, Ward merely points to record evidence that she contends supports additional limitations. (*Id.* at 11-19). But it is well settled that courts reviewing an ALJ's decision "must not substitute our own judgment for that of the fact

finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)); *see also Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) ("Neither the district court nor this court is empowered to weigh the evidence or substitute [our] conclusions for those of the fact-finder.") (citing *Early v. Heackler*, 743 F. 2d 1002, 1007 (3d Cir. 1984)). Indeed, we are not permitted at this stage to reweigh the evidence. *Chandler*, 667 F.3d at 359. Accordingly, we find this argument entirely unpersuasive.

Ward next argues that the ALJ erred in not considering her symptoms related to her alleged paranoia, fatigue, or sleep disorder, and, had the ALJ so considered, she would have found these three impairments to be severe. (Doc. 11 at 19-21). Had they been labeled severe impairments, the ALJ would have been obligated to include corresponding limitations accounting for those impairments in Ward's RFC. *See* 20 C.F.R. § 404.152(e). We reiterate that a claimant bears the burden to show that an impairment should be considered severe. *Bowen*, 482 U.S. at 146; *Stancavage*, 469 F. Supp. 3d at 331.

The ALJ found that Ward suffered from four severe impairments—panic disorder with agoraphobia, obsessive compulsive disorder, anxiety, and depression. (Tr. 13). While Ward contends that the ALJ improperly failed to consider her other impairments and symptoms, such as fatigue, sleep deprivation, and paranoia, our review of the ALJ's decision indicates that the ALJ did, in fact, consider these symptoms but declined to find them severe or include any additional limitations in the RFC. The ALJ considered fatigue and sleep deprivation in two contexts. (Tr. 14, 17, 18). The ALJ found that Ward's statements about these symptoms did not show a severe impairment because her statements were not entirely consistent with the objective evidence. (Tr. 18). The ALJ pointed to medical records from May 18, July 6, and October 7, 2020, as evidence that Ward was generally improving, doing "good," and showing normal thought processes, all of which belied that fatigue, sleep deprivation, and certain other reported symptoms were severe impairments. (*Id.*). As we have explained, Step 2 is a de minimis screening device used to cast out meritless claims. *McCrea*, 370 F.3d at 360; *Newell*, 347 F.3d at 546. Given that low standard, we find these

discussions suffice to show that sufficient evidence supported the ALJ's finding that neither fatigue nor sleep deprivation were severe impairments.

As to paranoia, we find there is insufficient evidence of this impairment in the record to support the plaintiff's claim that the ALJ should have considered it a severe impairment. We again reiterate that it is the plaintiff's burden at Step 2 to "introduce sufficient evidence to establish a severe impairment [.]" *Witkowski v. Astrue*, 2010 WL 2287560, at *7 (D.N.J. June 3, 2010) (citing *Bowen*, 482 U.S. at 146-47). In the nearly-1500-page record that accompanies this case, there is *one* mention of paranoia—a single notation of "thought content: Paranoid" from a September 8, 2021, video consultation with CRNP Plasic-Van Wagner. (Tr. 860). WSP staff recorded over 40 instances of Ward's "thought content" over four years of consultations, and other than the September 8, 2021, report, every consultation noted "normal" or "logical" thought content. (Tr. 485, 489, 493, 497, 501, 505, 509, 515, 533, 539, 560, 580, 583, 586, 589, 608, 611, 657, 660, 662, 665, 667, 670, 867, 871, 907, 911, 923, 936, 946, 956, 963, 1028, 1039, 1108, 1111, 1119, 1123,

1127, 1133, 1151, 1168).    Ward points to nothing else in the record to suggest this impairment should have been found severe.  Accordingly, we conclude that the ALJ did not err in considering her paranoia to be a severe impairment.

### 2. The ALJ Properly Considered the Medical Opinions.

An ALJ's consideration of medical opinion evidence is subject to statutory standards put forth at 20 C.F.R. § 404.1520c, discussed above. Ward argues here that the ALJ improperly considered the medical opinions of Drs. Zimberg, Miller, Umbrasas, Clark, and Keiter. (Doc. 11 at 24-27).  We disagree and conclude that the ALJ's evaluation of these opinions is supported by substantial evidence.

Here, the ALJ considered the relevant opinion evidence and explained the level of persuasiveness she afforded to each and why. Thus, the ALJ found Dr. Zimberg's opinion unpersuasive, concluding that it was internally inconsistent and that his findings regarding the paragraph B criteria and expected absenteeism were "not consistent with the claimant's medical records on a longitudinal basis [.]" (Tr. 22.).  The ALJ concluded that only portions of Dr. Miller's opinion were persuasive,

and other portions were inconsistent with certain medical records, including, *inter alia*, normal mental status examinations, normal thought process, logical thought content, and lack of emergent treatment for mental impairments. (Tr. 21). The ALJ found only one part of Dr. Umbrasas' opinion persuasive, the portion indicating Ward's impairments do not meet listing 12.04 or 12.06. (Tr. 23). The ALJ further found Dr. Umbrasas' opinion relating to the paragraph B criteria unpersuasive, as it was not consistent with certain medical records that "documented abnormal clinical examination findings pertaining to the claimant's mental impairments." (Tr. 23).

Additionally, the ALJ considered the opinions of the state agency consultants, Drs. Clark and Keiter, and explained the level of persuasiveness afforded to these opinions. Ward's argument appears to suggest that these opinions should not have been assigned any weight. However, State agency consultants are routinely found to have more persuasive opinions than doctors who performed an examination. *See e.g., Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 284 (M.D. Pa. 2022); *Chandler*, 667 F.3d at 361-62. Accordingly, Ward's contention that these

27

opinions should have been given less weight, if any at all, due to their status as state agency consultants, is entirely unavailing.

While Ward argues that certain facts on record belie the ALJ's conclusions, we may not re-weigh evidence. In sum, we find that the ALJ was confronted with varying medical opinions, explained her reasoning in finding some persuasive and discounting others, and included the credibly established limitations from persuasive opinions in the RFC. Given that the ALJ considered all the evidence, adequately explained her decisions, and made no apparent error in her treatment of medical opinion evidence, we find no error with her decision. Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we hold that substantial evidence supported the ALJ's evaluation of this case, and her decision will be affirmed.

## IV.  Conclusion

For the foregoing reasons, the decision of the Commissioner in this

case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: April 10, 2025